IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE: INTEL CORPORATION DERIVATIVE LITIGATION

)
)
)

C.A. No. 08-cv-93 (JJF)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT
OR, IN THE ALTERNATIVE, TO STAY THIS ACTION**

OF COUNSEL:

Jonathan C. Dickey
Marshall R. King
GIBSON DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

POTTER ANDERSON & CORROON LLP
  Donald J. Wolfe, Jr. (I.D. #285)
  Stephen C. Norman (I.D. #2686)
  Hercules Plaza, 6th Floor
  1313 North Market Street
  P. O. Box 951
  Wilmington, Delaware 19899-0951
  (302) 984-6000
  E-mail: dwolfe@potteranderson.com
  E-mail: snorman@potteranderson.com

  *Attorneys for Defendants*

Dated: September 5, 2008

# TABLE OF CONTENTS

Page

INTRODUCTION AND STATEMENT OF FACTS .................................................................1

ARGUMENT ...........................................................................................................................5

I.      DELAWARE LAW MANDATES DISMISSAL UNLESS PLAINTIFF
CAN SHOW THAT MAKING DEMAND WOULD HAVE BEEN
FUTILE...........................................................................................................................5

     A.      Under Applicable Delaware Law, Plaintiff Was Required to Make
a Demand on Intel's Board of Directors Prior to Bringing this
Lawsuit, or Plead Particularized Facts Excusing Demand ..........................5

     B.      Delaware Law Requires Plaintiff to Plead Particularized Facts
Creating a Reasonable Doubt that the Members of the Board Are
Disinterested and Independent, or that the Challenged Transaction
Was Otherwise the Product of a Valid Exercise of Business
Judgment ........................................................................................................6

II.      PLAINTIFF HAS FAILED TO PLEAD WITH PARTICULARITY
THAT DEMAND ON THE BOARD WOULD HAVE BEEN FUTILE...............7

     A.      There is No Basis for Plaintiff's Conclusory Assertion That the
Intel Board Lacks Independence or Objectivity .........................................9

     B.      Allegations of an Alleged Breach of the Board's "Duty of
Oversight" Do Not Give Rise to a Substantial Likelihood of
Personal Liability ........................................................................................12

     C.      Generic Allegations of a Threat of Personal Liability Cannot
Overcome The "Exculpatory" Provisions in Intel's Certification of
Incorporation...............................................................................................15

     D.      Generic Allegations that Directors Cannot "Sue Themselves" Are
Insufficient ..................................................................................................16

     E.      Generic Allegations that the Board is Dominated by the "Known
Principal Wrongdoers" Are Insufficient ....................................................17

     F.      Plaintiff Has Failed to Plead Particularized Facts to Demonstrate
that Any "Decision" by the Board Is Not Protected by the Business
Judgment Rule .............................................................................................18

i

**TABLE OF CONTENTS**
**[Continued]**

Page

III.   PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH HE MAY BE
       GRANTED RELIEF ............................................................................................. 19

IV.    PLAINTIFF FAILS TO PLEAD CONTEMPORANEOUS OWNERSHIP
       IN ACCORDANCE WITH THE REQUIREMENTS OF FED. R. CIV. P.
       23.1 .................................................................................................................... 20

V.     PLAINTIFF'S CLAIMS MUST BE DISMISSED TO THE EXTENT
       THEY ARE BARRED BY THE THREE-YEAR STATUTE OF
       LIMITATIONS ................................................................................................... 21

VI.    IF THIS COURT DECLINES TO DISMISS THE COMPLAINT, IT
       SHOULD STAY THIS ACTION PENDING THE OUTCOME OF THE
       ANTITRUST LITIGATION ALREADY UNDERWAY IN THIS
       COURT ............................................................................................................... 24

CONCLUSION ................................................................................................................... 27

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abramson v. Pennwood Inv. Corp.,*
   392 F.2d 759 (2d Cir. 1968)................................................................ 20

*Advanced Micro Devices v. Intel Corp.,*
   26 Cal. App. 4th 1655, 20 Cal. Rptr. 2d 73 (1993), *rev'd*, 9 Cal. 4th 362, 885 P.2d 994,
   36 Cal. Rptr. 2d 581 (1994) ...............................................................23

*Amalgamated Bank v. Yost,*
   No. 04-0972, 2005 WL 226117 (E.D. Pa. Jan. 31, 2005)........................................ 15

*Andreae v. Andreae,*
   No. 11905, 1992 WL 43924 (Del. Ch. Mar. 3, 1992)............................................ 17

*Aronson v. Lewis,*
   473 A.2d 805 (Del. 1984) ........................................................... passim

*Bechtel Corp. v. Local 215, Laborers' Int'l Union,*
   544 F.2d 1207 (3d Cir. 1976)............................................................ 25

*Bell Atlantic v. Twombly,*
   127 S. Ct. 1955 (2007).................................................................. 19

*Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.,*
   435 F.3d 396 (3d Cir. 2006)............................................................ 21

*Brehm v. Eisner,*
   746 A.2d 244 (Del. 2000) ........................................................... passim

*Brudno v. Wise,*
   No. 19953, 2003 WL 1874750 (Del. Ch. Aug. 1, 2003) ........................................ 21

*Canadian Commercial Workers Indus. Pension Plan v. Alden,*
   No. 1184-N, 2006 WL 456786 (Del. Ch. Feb. 22, 2006) ....................................... 20

*Cheyney State College Faculty v. Hufstedler,*
   703 F.2d 732 (3d Cir. 1983)............................................................ 24

*Commissariat a L'Energie Atomique v. Tottori Sanyo Electronic Co.,*
   No. 03-484-KAJ, 2004 WL 1554382 (D. Del. May 13, 2004).................................. 24, 25

*Dana Corp. v. LTV Corp.*,
  668 A.2d 752 (Del. Ch. 1995), *aff'd*, 670 A.2d 1337 (Del. 1995) ............................................ 22

*Getty Oil Co. v. Catalytic, Inc.*,
  509 A.2d 1123 (Del. Super. Ct. 1986) ................................................................. 21

*Grobow v. Perot*,
  539 A.2d 180 (Del. 1988) ............................................................................ 18

*Guttman v. Huang*,
  823 A.2d 492 (Del. Ch. 2003) ................................................................. 11, 14

*Haber v. Bell*,
  465 A.2d 353 (Del. Ch. 1983) ......................................................................... 7

*Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*,
  No. 04-1337-KAJ, 2005 WL 2465898 (D. Del. May 18, 2005) ................................ 25

*In re Caremark Int'l Inc. Deriv. Litig.*,
  693 A.2d 959 (Del Ch. 1996) ................................................................... passim

*In re Coca-Cola Enters., Inc.*,
  No. 1927-CC, 2007 WL 3122370 (Del. Ch. Oct. 17, 2007) ................................... 22

*In re Computer Sci. Corp. Deriv. Litig.*,
  No. 06-05288 MRP, 2007 WL 1321715 (C.D. Cal. Mar. 27, 2007) ........................ 20

*In re Dean Witter P'ship Litig.*,
  No. 14816, 1998 WL 442456 (Del. Ch. July 17, 1998) ................................... 21, 22

*In re Sagent Tech.*,
  278 F. Supp. 2d 1079 (N.D. Cal. 2003) ........................................................ 20

*In re Tri-Star Pictures, Inc. Litig.*,
  No. 9477, 1995 WL 106520 (Del. Ch. Mar. 9, 1995) ......................................... 9

*In re Walt Disney Co. Derivative Litig.*,
  731 A.2d 342 (Del. Ch. 1998), *aff'd in part, rev'd in part sub nom. Brehm v.  Eisner*,
  746 A.2d 244 (Del. 2000) ......................................................................... 17

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ................................................................................ 23

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90 (1991) ................................................................................. 5, 6

*Kanter v. Barella*,
  489 F.3d 170 (3d Cir. 2007) ............................................................... passim

*Khanna v. McMinn,*
    No. 20545-NC, 2006 WL 1388744 (Del. Ch. May 9, 2006) .................................................. 18

*Landis v. North Am. Co.,*
    299 U.S. 248 (1936) ......................................................................................................... 24, 26

*Levine v. Smith,*
    591 A.2d 194 (Del. 1991) ......................................................................................................... 7

*Lewis v. Chiles,*
    719 F.2d 1044 (9th Cir. 1983) ............................................................................................... 20

*Lewis v. Fites,*
    No. 12566, 1993 WL 47842 (Del. Ch. Feb. 19, 1993) .......................................................... 12

*Microchip Tech., Inc. v. Motorola, Inc.,*
    No. 01-264-JJF, 2002 WL 32332753 (D. Del. May 28, 2002) ................................................ 26

*Rales v. Blasband,*
    634 A.2d 927 (Del. 1993) ..................................................................................................... 7, 8

*Seinfeld v. Barrett,*
    No. 05-298-JJF, 2006 WL 890909 (D. Del. Mar. 31, 2006) .................................................. 16

*Seminaris v. Landa,*
    662 A.2d 1350 (Del. Ch. 1995) ............................................................................................... 12

*Simon v. Navellier Series Fund,*
    No. 17734, 2000 WL 1597890 (Del. Ch. Oct. 19, 2000) ........................................................ 21

*Smith v. McGee,*
    No. 2101-S, 2006 WL 3000363 (Del. Ch. Oct. 16, 2006) ........................................... 21, 22, 23

*Stein v. Orloff,*
    No. 7276, 1985 WL 11561 (Del. Ch. May 30, 1985) ................................................................ 8

*Step-Saver Data Systems, Inc. v. Wyse Tech.,*
    912 F.2d 643 (3d Cir. 1990) .................................................................................................... 21

*Stone v. Ritter,*
    911 A.2d 362 (Del. 2006) ..................................................................................... 2, 11, 12, 13

*Texaco, Inc. v. Borda,*
    383 F.2d 607 (3d Cir. 1967) .................................................................................................... 25

*Tracinda Corp. v. DaimlerChrysler AG,*
    197 F. Supp. 2d 42 (D. Del. 2002) .......................................................................................... 22

v

*United Sweetener USA, Inc. v. Nutrasweet Co.*,
  766 F. Supp. 212 (D. Del. 1991).................................................................................. 24

*Weiss v. Temporary Inv. Fund, Inc.*,
  516 F. Supp. 665 (D. Del. 1981)............................................................................ 17, 18

*Wood v. Baum*,
  953 A.2d 136 (Del.2008) ....................................................................................... passim

**Statutes**

8 Del. C. § 102(b)(7)................................................................................................. 11, 15

8 Del. C. § 141(k) ............................................................................................................ 18

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................... 1, 19

Fed. R. Civ. P. 23.1 ................................................................................................ 1, 2, 20

Fed. R. Civ. P. 23.1(b)(1).................................................................................................. 3

Fed. R. Civ. P. 23.1(b)(3).................................................................................................. 5

Defendants in this action, consisting of nominal defendant Intel Corporation ("Intel" or the "Company") and all of the members of Intel's Board of Directors at the time this action was commenced, respectfully submit this memorandum of law in support of their motion to dismiss the Verified Amended Consolidated Shareholder Derivative Complaint, filed August 7, 2007 (the "Complaint"), for failure to comply with the standing and pleading requirements of Fed. R. Civ. P. 23.1 and Delaware law, and failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, Defendants seek to stay this action pending the resolution of related litigation on which this action is premised.

## INTRODUCTION AND STATEMENT OF FACTS

Plaintiff Martin Smilow ("Plaintiff"), an individual who claims in conclusory fashion to have owned shares of Intel at some unidentified point in time, has sued the entire Board of Directors (the "Board"), as well as a former Board member, for their alleged failure to prevent the Company from committing a series of allegedly anticompetitive practices intended to monopolize the microprocessor market. This "derivative" lawsuit is a thinly disguised reworking – and in many cases, a verbatim rehashing – of the allegations set forth in the antitrust case currently pending before this Court, *In re Intel Corp. Microprocessor Antitrust Litigation*.[1]

Although the allegations in the underlying antitrust case have not been proven and in fact are vigorously contested by Intel, Plaintiff, purporting to act *on behalf* of Intel, has adopted those disputed allegations as true and seeks to capitalize on the pending antitrust litigation by suing Intel's directors for alleged dereliction of duty. Plaintiff avers that "[t]here was a sustained and

---

[1] MDL No. 05-1717 JJF.

systematic failure of the Board to exercise oversight" (Compl. ¶ 86(ii)) – a *Caremark* claim,[2] recently described by the Supreme Court of the State of Delaware as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win judgment."[3]  In an effort to create the illusion of a lengthy pattern of wrongdoing, Plaintiff strings together discrete, unrelated events and mischaracterizes certain prior proceedings as "antitrust"-related, when in fact they were ordinary commercial disputes.  The utter lack of merit to Plaintiff's lawsuit is matched by his conspicuous failure to plead any specific facts that would establish his standing to sue derivatively on behalf of the Company, or otherwise to state a claim for relief.

Under long-standing principles of Delaware law, the decision whether to bring suit on behalf of a corporation rests squarely with its board of directors, and Plaintiff here has made no demand on the Intel Board to commence any suit.  In the exceptional case, courts have permitted shareholders to sue derivatively when demand upon the Board would be futile.  But no such exceptional case exists here, and this Court therefore should dismiss this case outright for lack of standing.  As will be shown, it cannot be seriously argued that a majority of Intel's Board of Directors is lacking in independence or otherwise "interested" in the actions raised in the Complaint.  Plaintiff does no more than parrot the applicable legal standards, but the Complaint alleges no particularized facts, as required by Rule 23.1 and Delaware law, to demonstrate that the Intel Board violated any duty of oversight under *Caremark* and the most recent Delaware Supreme Court authority on this subject, *Stone v. Ritter*.  Nor does Plaintiff plead any other facts that demonstrate that a majority of the Board members face a substantial risk of personal liability

---

[2]  *In re Caremark Int'l Inc. Deriv. Litig.*, 693 A.2d 959 (Del Ch. 1996).

[3]  *Stone v. Ritter*, 911 A.2d 362, 372 (Del. 2006) (quoting *Caremark,* 698 A.2d at 967)

by reason of such alleged conduct. Indeed, in a derivative case focusing on the Board's alleged derelictions of duty, and where Plaintiff must plead particularized facts to demonstrate the Board's lack of independence, the Complaint is conspicuous in the almost complete *absence* of factual allegations concerning what any Board member did or did not do. Nor do Plaintiff's conclusory allegations cast any doubt on the applicability of the business judgment rule to any "decision" made by the Board. The generic allegations made by Plaintiff here could be made with respect to the board of any corporation facing any potential underlying liability. Yet the law is clear that, before a shareholder is permitted to usurp the board's authority to manage the corporation – including its power to determine whether, when, and how to commence and pursue or defend litigation – far more specificity is required. For this reason alone, this case must be dismissed for lack of standing and failure to state a claim.

Plaintiff lacks standing to sue for the additional reason that he has failed to allege facts demonstrating that he meets the contemporaneous ownership requirements of Rule 23.1(b)(1) of the Federal Rules of Civil Procedure. Plaintiff's generic allegation that he has owned Intel shares "at all times relevant herein" is insufficient as a matter of law to establish his standing to sue.

In addition to Plaintiff's obvious lack of standing, this action also must be dismissed because Plaintiff's claims are time-barred by the relevant three-year statute of limitations. Indeed, the face of the Complaint demonstrates that many of the facts upon which the fiduciary breach claims are based were publicly known as early as 1987, and include a much-publicized

arbitration decision in 1992, some 16 years before Plaintiff brought suit. (Compl. ¶ 27).[4] Likewise, Plaintiff admits that much of the conduct about which he complains was the subject of proceedings brought by the Japanese Fair Trade Commission ("JFTC") in April 2004, almost four years before suit was filed. (Compl. ¶¶ 33-35). Thus, by Plaintiff's own admission, many of the alleged actions and inactions upon which his claims depend has been in the public domain for many years, and therefore his claims are time-barred.

In the event that this Court should decline to dismiss Plaintiff's Complaint in its entirety, it should, in the alternative, stay this action pending the resolution of the related antitrust litigation already underway before this Court. As noted above, the factual allegations underlying this action are drawn almost entirely from the related antitrust complaint. Whether those factual allegations amount to wrongful, anticompetitive conduct remains to be decided, and is the subject of vigorous dispute in the antitrust proceedings. Without such a finding, however, there is little or nothing left of Plaintiff's claim that the Intel Board failed to prevent wrongful, anticompetitive conduct. The outcome of the antitrust litigation, therefore, will have a direct – and perhaps dispositive – effect on the merits of the present derivative suit. This Court has already recognized this relationship, and directed that the trial of this derivative suit will occur *after* the trial of the antitrust litigation, currently scheduled to begin in February 2010. Accordingly, it will benefit all parties to await the outcome of the antitrust proceedings before

---

[4] Although Plaintiff makes much of the 1992 arbitration award (Compl. ¶¶ 27, 86(ii)(a)), he neglects to mention that the arbitration dispute was ultimately settled by the parties as part of a global settlement of all outstanding litigation, which resulted in a net payment *to Intel*. *See* Defendants' Request for Judicial Notice ("RJN"), Ex. A (AMD Form 8-K, dated January 19, 1995).

expending time, effort, and resources to litigate this derivative case. Thus, if this Court does not dismiss the Complaint, a stay is certainly warranted.

## ARGUMENT

### I. DELAWARE LAW MANDATES DISMISSAL UNLESS PLAINTIFF CAN SHOW THAT MAKING DEMAND WOULD HAVE BEEN FUTILE

#### A. Under Applicable Delaware Law, Plaintiff Was Required to Make a Demand on Intel's Board of Directors Prior to Bringing this Lawsuit, or Plead Particularized Facts Excusing Demand

It is "[a] cardinal precept . . . that directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson v. Lewis,* 473 A.2d 805, 811 (Del. 1984).[5] Thus, a shareholder seeking to pursue a corporation's claims derivatively must "state with particularity (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). The demand requirement is not merely a technical pleading rule. Rather, because a derivative action "impinges on the managerial freedom of directors," *Aronson,* 473 A.2d at 811, "the function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of 'substance,' not 'procedure.'" *Kamen,* 500 U.S. at 96-97. The purpose of the demand requirement is to ensure "that a

---

[5] Intel is a Delaware corporation. (Compl. ¶ 7). Therefore, Delaware law governs the question of whether Plaintiffs are excused from making a demand on Intel's board. *See Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 108-09 (1991) (courts "must apply the demand futility exception as it is defined by the law of the State of incorporation"); *Kanter v. Barella,* 489 F.3d 170, 176 (3d Cir. 2007) ("federal courts hearing shareholders' derivative actions involving state law claims apply the federal procedural requirement of particularized pleading, but apply state substantive law to determine whether the facts demonstrate demand would have been futile and can be excused").

stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits." *Aronson*, 473 A.2d at 811-12.

The need for the protections of the demand requirement is particularly acute in the circumstances here. Intel is presently engaged in a complex, contentious litigation against Advanced Micro Devices ("AMD") and others relating to alleged antitrust misconduct. In that litigation, Intel is resisting liability and contends that its vigorous economic competition is both legitimate *and* in the best interests of its shareholders, the market, and consumers. Now, before any misconduct has been proven, and without any facts at his disposal other than the allegations of Intel's adversaries, an Intel shareholder purports to know better. He seeks to inject himself in the midst of that litigation by *adopting* the disputed allegations of anticompetitive corporate conduct as the central premise for his legal allegations of breach of fiduciary duty – allegations that can only work to the detriment of Intel and its shareholders as it seeks to avoid liability in the antitrust litigation. Delaware law requires much more than is pled here before the ordinary corporate governance procedures can be so dramatically overturned.

Here, Plaintiff has not made a demand on the Board to commence litigation and, therefore, he is "obliged to plead, with particularity, facts that establish demand futility." *Kanter*, 489 F.3d at 176.

### B. Delaware Law Requires Plaintiff to Plead Particularized Facts Creating a Reasonable Doubt that the Members of the Board Are Disinterested and Independent, or that the Challenged Transaction Was Otherwise the Product of a Valid Exercise of Business Judgment

In order to show demand futility under Delaware law, a plaintiff must allege "particularized facts" that create "a reasonable doubt . . . that (1) the directors are disinterested and independent, [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson*, 473 A.2d at 814; *see also Brehm v. Eisner*, 746 A.2d 244, 256

(Del. 2000). However, "a court should not apply the *Aronson* test for demand futility where the board that would be considering the demand did not make a business decision which is being challenged in the derivative suit." *Rales v. Blasband*, 634 A.2d 927, 933-34 (Del. 1993). The *Rales* court identified "three principal scenarios" in which this situation would arise, among them, "where the claim at issue does not arise from a business decision of the board," such as "where directors are sued derivatively because they have failed to do something (such as a failure to oversee subordinates)." *Id.* at 934 & n.9. In the context of an oversight claim, "a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Id.* at 934.

Any effort to demonstrate demand futility must meet "stringent requirements of factual particularity." *Brehm*, 746 A.2d at 254. Indeed, "[c]onclusory 'allegations of fact or law not supported by allegations of specific fact may not be taken as true.'" *Levine v. Smith*, 591 A.2d 194, 207 (Del. 1991) (citation omitted), *overruled on other grounds by Brehm*, 746 A.2d 244. Rather, Plaintiff must plead "particularized factual statements" akin to "ultimate facts," "principal facts" or "elemental facts" demonstrating that demand is excused. *Brehm*, 746 A.2d at 254. If Plaintiff fails to carry this pleading burden, the complaint must be dismissed even if the claim is otherwise meritorious. *Haber v. Bell*, 465 A.2d 353, 357 (Del. Ch. 1983).

## II.    PLAINTIFF HAS FAILED TO PLEAD WITH PARTICULARITY THAT DEMAND ON THE BOARD WOULD HAVE BEEN FUTILE

Plaintiff fails to plead particularized facts creating a reasonable doubt that a majority of Intel's Board is interested or dependent under the *Aronson* or *Rales* tests. Therefore, the Complaint must be dismissed.

Plaintiff's allegations of demand futility boil down to the conclusory claim that at least six of the Intel Board's twelve directors – ten of whom were outside directors – were neither disinterested nor independent.[6]  However, aside from identifying each of the members of the Board, Plaintiff pleads virtually no facts at all about any of the Board members.  Instead, Plaintiff's demand futility allegations consist solely of eight generic, redundant, conclusory subparagraphs that come nowhere close to meeting Delaware's stringent pleading requirements. *See* Compl. ¶ 86(i)-(viii).

Plaintiff asserts that demand is futile for essentially two reasons:  (1) because the Board has failed to take action against those responsible for alleged "antitrust" violations committed by Intel since 1987 (Compl. ¶ 86(i)-(v), (vii));[7] and (2) because the Board is allegedly beholden to unidentified "known principal wrongdoers," who confer Board compensation and other "substantial benefits, and other emoluments," supposedly making the Board unwilling to

---

[6]  The relevant Board members for considering the issue of demand futility are those who were on the Board at the time the derivative suit was commenced. *See, e.g.*, *Rales*, 634 A.2d at 934 ("a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand"); *Stein v. Orloff*, No. 7276, 1985 WL 11561, at *2 (Del. Ch. May 30, 1985) (holding that plaintiff had failed to demonstrate demand futility and explaining that while the "composition of the Board was not the same at all the times material to the challenged actions, . . . the issue of whether a presuit demand would have been futile will be determined with reference to the circumstances existing at the time of commencement of the action").  Thus, all twelve individual defendants are properly considered.  Since the time this action was commenced, however, one of the individual defendants, James Guzy, has retired from the Intel Board. *See* RJN Ex. B, at 4 (Intel Proxy Statement, dated April 2, 2008).

[7]  Although Plaintiff spreads these allegations across multiple subparagraphs, each of them says essentially the same thing; indeed, two of them are nearly identical. *Compare* Compl. ¶ 86(i) ("The Intel Board has proven itself to be unwilling to bring remedial action against wrongdoers . . . ."), *with id.* ¶ 86(v) ("The Board has failed to commence any action against the principal wrongdoers . . . .").

investigate and/or sue themselves and their fellow directors (*id.* ¶ 86(vi)-(viii)).  As demonstrated below, these claims are manifestly insufficient to meet the "stringent requirements of factual particularity" needed to demonstrate demand futility.  *Brehm*, 746 A.2d at 254.

### A.    There is No Basis for Plaintiff's Conclusory Assertion That the Intel Board Lacks Independence or Objectivity

The conclusory allegations on which Plaintiff urges the Court to rely in concluding that a majority of the Intel Board is conflicted are woefully inadequate to sustain such a conclusion.  It is undisputed that:

- None of the twelve directors is alleged to be a party to any of the underlying "antitrust" actions, suits or proceedings, or to face any specific risk of personal liability in any pending action.

- None of the outside directors is alleged to have received any benefits other than his or her director compensation, and no allegation is made that such compensation is outside the range of typical and customary compensation for service on the board of a major Fortune 500 company.

- Ten of the twelve Intel directors are outside directors.  (Compl. ¶¶ 10-19; *see also* RJN Ex. B, at 8.  No specific facts are pled as to any of these ten directors suggesting that they were controlled in any respect by any member of management or any person involved in the underlying conduct.

- Only two of the twelve directors, Messrs. Barrett and Otellini, are insiders.  (Compl. ¶¶ 8-9).  The Complaint contains only a single allegation regarding Mr. Barrett's alleged involvement in the underlying antitrust facts and circumstances (*id.* ¶ 50), and alleges *none* against Mr. Otellini.

- Eleven of the twelve directors joined the Board subsequent to the alleged commencement of wrongdoing in 1987.  (*See* Compl. ¶¶ 8-19).  Indeed, four of the directors joined the Board within the last four years, and one joined only a month before this action was commenced.[8]

---

[8] No director can be held liable for any wrongdoing at Intel before he or she joined the Board.  *See In re Tri-Star Pictures, Inc. Litig.*, No. 9477, 1995 WL 106520, at *2 (Del. Ch. Mar. 9, 1995) ("Delaware law clearly prescribes that a director who plays no role in the process of

[Footnote continued on next page]

In short, Plaintiff's allegations do not implicate a majority of the Board in *anything*, much less demonstrate that a majority of the Board lacks independence or is otherwise "interested." To a large degree, the Complaint is a mere regurgitation of the allegations in the pending antitrust litigation filed by AMD against Intel.[9]  Only one paragraph in Plaintiff's 36-page Complaint relates to the allegedly wrongful behavior of a member of the Board, an allegation that itself is borrowed from the *AMD* complaint.  (*Compare* Compl. ¶ 50 *with* RJN Ex. C ¶ 79).[10] The fact that the *only* factual allegation made by Plaintiff is copied from the *AMD* Litigation, and relates to only one of the twelve directors, underscores the utter lack of particularized facts in the Complaint.  Where, as here, "the complaint fails to allege specific actions by any of the defendants, nor does it assert knowledge of alleged wrongdoings," the "conclusory allegations [are] insufficient to satisfy the heightened pleading requirements of Rule 23.1."  *Kanter*, 489 F.3d at 180 (concluding that where, "with the exception of [one director], no specific director is alleged to have any interest in the alleged scheme that would differ from the shareholders',"

---

[Footnote continued from previous page]
deciding whether to approve a challenged transaction cannot be held liable on a claim that the board's decision to approve that transaction was wrongful.") (citations omitted).

[9]  *See* RJN Ex. C (complaint in *Advanced Micro Devices Inc. v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litigation)*, MDL Docket No. 05-1717-JJF, Civil Action No. 05-441-JJF ("*AMD* Litigation")).

[10]  The only other "conduct" specifically alleged against any Board member is the signing of Intel's SEC filings – which is not cited as involvement in alleged wrongdoing, but merely as evidence that the Board members were "aware" of the investigations reported therein. Compl. ¶ 86(ii)(e) & (vii).  "Delaware law on this point is clear:  board approval of a transaction, even one that later proves to be improper, without more, is an insufficient basis to infer culpable knowledge or bad faith on the part of individual directors."  *Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008).

plaintiff "has not pled sufficiently particularized facts to show director interest or lack of independence").[11]

Delaware law is clear that the "mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors." *Aronson*, 473 A.2d at 815. Instead, Plaintiff must plead *particularized facts* establishing that the directors face a "substantial likelihood" of personal liability for the wrongdoing in the complaint. *See, e.g., id.*; *Guttman v. Huang*, 823 A.2d 492, 500 n.15 (Del. Ch. 2003) (citing cases). Moreover, where, as here, directors are exculpated by charter from certain liability, as permitted by 8 Del. C. § 102(b)(7) (*see infra* Section II.C), "then a serious threat of liability may only be found to exist if the plaintiff pleads a *non-exculpated* claim against the directors based on particularized facts." *Wood*, 953 A.2d at 141 (quoting *Guttman*, 823 A.2d at 501). Because the directors are protected from liability for duty of care violations, Plaintiff must demonstrate that "the directors knew that they were not discharging their fiduciary obligations" such that they can be said to have acted in "a conscious disregard for their responsibilities." *Stone v. Ritter*, 911 A.2d at 370; *see also Wood*, 953 A.2d at 141 ("a plaintiff must also plead particularized facts that demonstrate that the directors acted with scienter, *i.e.*, that they had 'actual or constructive knowledge' that their conduct was legally improper") (citations omitted).

Thus, the mere presence of parallel litigation challenging conduct on the part of the corporation, without more, does not establish that a majority of the Board face *any* chance of

---

[11] Although *Kanter* applied New Jersey law, the Third Circuit noted that the leading New Jersey case drew "guidance" from Delaware case law, including *Aronson* and *Brehm*. 489 F.3d at 176-77.

liability by reason of that conduct – much less a "substantial likelihood" of liability – for unsupported allegations of breach of fiduciary duty related to such acts. *See, e.g., Seminaris v. Landa,* 662 A.2d 1350, 1355 (Del. Ch. 1995) (rejecting plaintiff's argument that demand was excused by substantial likelihood of director liability, and finding that substantial likelihood was not established by allegations of SEC investigation and potential criminal sanctions); *Lewis v. Fites,* No. 12566, 1993 WL 47842, at *3 (Del. Ch. Feb. 19, 1993) (rejecting plaintiff's argument that demand was excused by substantial likelihood of director liability, and finding that substantial likelihood was not established by consent order setting forth violations of federal securities law).

### B.    Allegations of an Alleged Breach of the Board's "Duty of Oversight" Do Not Give Rise to a Substantial Likelihood of Personal Liability

To the extent Plaintiff purports to assert a breach of fiduciary claim based upon breach of the directors' *Caremark* "duty of oversight," that theory fails, because no facts are pled to establish a breach of this duty of loyalty.

Plaintiff alleges a straightforward *Caremark* claim – that is, a breach of fiduciary duty due to the "utter failure to attempt to assure a reasonable information and reporting system exists," or the conscious failure to monitor such reporting systems. *Stone v. Ritter*, 911 A.2d at 364; *see* Compl. ¶ 89. This sort of claim, "[a] claim that directors are subject to personal liability for employee failures, is 'possibly the most difficult theory in corporation law upon which a plaintiff might hope to win judgment.'" *Stone v. Ritter*, 911 A.2d at 372 (quoting *Caremark,* 698 A.2d at 967). Acknowledging this, the Supreme Court of Delaware has set a high pleading standard in order to make out an oversight claim:

> such a test of liability – lack of good faith as evidenced by sustained or systematic failure of a director to exercise reasonable oversight – is quite high. But, a

12

> demanding test of liability in the oversight context is probably beneficial to corporate shareholders as a class, as it is in the board decision context, since it makes board service by qualified persons more likely, while continuing to act as a stimulus to *good faith performance of duty* by such directors.

*Id.* (quoting *Caremark*, 698 A.2d at 971; emphasis in original). "[A]bsent grounds to suspect deception, neither corporate boards nor senior officers can be charged with wrongdoing simply for assuming the integrity of employees and the honesty of their dealings on the company's behalf." *Caremark*, 698 A.2d at 969. "Generally, where a claim of directorial liability for corporate loss is predicated upon ignorance of liability creating activities within the corporation, . . . *only a sustained or systematic failure of the board to exercise oversight such as an utter failure to attempt to assure a reasonable information and reporting system exists will establish the lack of good faith that is a necessary condition to liability.*" *Id.* at 971 (emphasis added); *accord Stone v. Ritter*, 911 A.2d at 372. It is not enough for Plaintiff, "with the benefit of hindsight," to "seek[] to equate a bad outcome with bad faith." *Stone v. Ritter*, 911 A.2d at 373.

In *Stone v. Ritter*, the Delaware Supreme Court observed that the plaintiffs' allegations exhibited

> a failure to recognize that the directors' good faith exercise of oversight responsibility may not invariably prevent employees from violating criminal laws, or from causing the corporation to incur significant liability, or both . . . . In the absence of red flags, good faith in the context of oversight must be measured by the directors' actions 'to assure a reasonable information and reporting system exists' and not by second-guessing after the occurrence of employee conduct that results in an unintended adverse outcome.

*Id.*

To similar effect here, Plaintiff's claim is simply that the Board failed to stop or remedy Intel's alleged antitrust violations. However, Plaintiff pleads no facts supporting the Board's "utter failure" to implement reasonable information and reporting systems. Instead, the

Complaint merely reiterates the claims made in the *AMD* Litigation, hoping that this Court will conclude, without examination, that those allegations are synonymous with a failure of oversight. Again parroting the legal standard without reference to supporting facts, Plaintiff alleges that there was "a sustained and systematic failure of the Board to exercise oversight," and that the Board ignored certain "red flags signaling persistent corporate malfeasance." Compl. ¶ 86(ii). But the alleged "red flags" consist largely of pending investigations into Intel's conduct (and a 16-year-old arbitration award in a contract case, which was later settled), and they provide no suggestion that the Board "consciously and in bad faith ignored the improprieties alleged in the complaint." *Wood*, 953 A.2d at 142 (rejecting alleged red flags as excuse for failure to make demand on board).[12]

Furthermore, the Complaint "is empty of the kind of fact pleading that is critical to a *Caremark* claim." *Guttman*, 823 A.2d at 507. "From the complaint, it is impossible to tell anything about the . . . compliance systems in place at [Intel] during the Contested Period." *Id.* Plaintiff's allegations fail to state a claim because they plead no facts regarding whether or not the Board "actually implemented an adequate system of . . . controls." *Id.*

In short, Plaintiff's allegations fail to meet his heavy burden of establishing the lack of good faith necessary to state a breach of fiduciary duty claim on the basis of a breach of the duty of oversight. Accordingly, the Complaint must be dismissed because demand on the Board is not excused and Plaintiff lacks standing.

---

[12] With regard to any completed antitrust proceedings, it must be noted that no such proceeding has involved any finding that Intel violated any antitrust laws of the United States.

14

C.    **Generic Allegations of a Threat of Personal Liability Cannot Overcome The "Exculpatory" Provisions in Intel's Certification of Incorporation**

The director Defendants are immunized from personal liability under Intel's certificate of incorporation. The "exculpatory" provision in Intel's charter documents eliminates liability for monetary relief for conduct other than intentional fraud, bad faith, or breach of the duty of loyalty. *See* RJN Ex. D.[13]  Pursuant to Delaware's General Corporation Law, 8 Del. C. § 102(b)(7), a certificate of incorporation may have, *inter alia*, "[a] provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director." Intel's Certificate of Incorporation has such a provision which states, in relevant part, "[t]o the fullest extent permitted by Delaware statutory or decisional law, as amended or interpreted, no director of this Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director." RJN Ex. D ¶ 8.

"Where directors are contractually or otherwise exculpated from liability for certain conduct, 'then a serious threat of liability may only be found to exist if the plaintiff pleads a *non-exculpated* claim against the directors based on particularized facts.'" *Wood*, 953 A.2d at 141 (citation omitted). This standard imposed by the Delaware Supreme Court requires pleading particularized facts to "demonstrate that the directors acted with scienter, *i.e.*, that they had 'actual or constructive knowledge' that their conduct was legally improper." *Id.*  Here, Plaintiff

---

13    This Court is authorized to take judicial notice of the Third Restated Certificate of Incorporation of Intel Corporation ("Intel's Certificate of Incorporation"). *See Amalgamated Bank v. Yost*, No. 04-0972, 2005 WL 226117, at *5 (E.D. Pa. Jan. 31, 2005) (taking judicial notice of exculpatory provisions of certificate of incorporation on a motion to dismiss; noting that accuracy of certificate "cannot be questioned because it is a public document filed with the Secretary of State"); *Wood*, 953 A.2d at 140-41 (considering exculpatory clause in operating agreement of Delaware limited liability company in deciding motion to dismiss).

pleads no such facts, or any other facts that would establish that any director Defendant engaged in conduct that is not protected under Section 102(b)(7). Thus, the Complaint fails to establish a "substantial likelihood" of liability that might suffice to excuse demand.

### D.    Generic Allegations that Directors Cannot "Sue Themselves" Are Insufficient

Plaintiff makes the boilerplate allegation that "[i]n order to bring this action for breach of fiduciary and common law duties, the members of the Intel Board of Directors would have been required to sue themselves and/or their fellow directors and allies in the top ranks of the Company." (Compl. ¶ 86(vii)). As this Court is aware, the Third Circuit has squarely rejected the "directors cannot sue themselves" theory of demand futility. In *Kanter*, *supra*, shareholders contended that demand was futile and filed a derivative action against the board of directors, alleging breach of fiduciary duties on the basis that the board "(1) fail[ed] to adequately ensure accurate and lawful billing practices, (2) fail[ed] to prevent the artificial inflation of billing figures, and (3) fail[ed] to accurately report the company's true financial condition in its published financial statements." 489 F.3d at 174-75. The Third Circuit affirmed the lower court's conclusion that "the bare allegation that a board is interested because its members would be reluctant to sue themselves has been considered and rejected." *Id.* at 180. This Court has reached the same conclusion. *See, e.g., Seinfeld v. Barrett*, No. 05-298-JJF, 2006 WL 890909, at *2 (D. Del. Mar. 31, 2006) ("The mere threat of personal liability for approving a board action . . . does not lead to the conclusion that a director is interested or lacks independence.").

The state courts of Delaware likewise have rejected Plaintiff's theory of demand futility. As the Delaware Supreme Court held in the *Disney* litigation, "it is no answer to say that demand is necessarily futile because (a) the directors 'would have to sue themselves, thereby placing the conduct of the litigation in hostile hands,' or (b) that they approved the underlying transaction."

*Brehm*, 746 A.2d at 257 n.34; *see also Aronson*, 473 A.2d at 818 ("Plaintiff's final argument is

the incantation that demand is excused because the directors otherwise would have to sue

themselves . . . . [A] bare claim of this sort raises no legally cognizable issue under Delaware

corporate law."). The mere fact that the members of the Board are Defendants in this lawsuit

does not automatically render any of them interested. Plaintiff here alleges no particularized

facts establishing that the members of the Board have any prospect of personal liability, much

less a "substantial likelihood" thereof.

### E.    Generic Allegations that the Board is Dominated by the "Known Principal Wrongdoers" Are Insufficient

In determining whether a director lacks independence, "the relevant inquiry is not how

the director got his position, but rather how he comports himself in that position." *Andreae v.*

*Andreae*, No. 11905, 1992 WL 43924, at *5 (Del. Ch. Mar. 3, 1992) (noting that Delaware courts

have consistently rejected the argument that a director cannot act independently of the entity that

appointed him or her to the board). "A director's nomination or election at the behest of a

controlling shareholder is not enough to show a lack of independence because that 'is the usual

way a person becomes a corporate director.'" *Kanter*, 489 F.3d at 179-80 (quoting *Aronson*, 473

A.2d at 816). Moreover, the issue of dominance and control requires pleading of specific facts

from which the Court can infer control. *Weiss v. Temporary Inv. Fund, Inc.*, 516 F. Supp. 665,

671 (D. Del. 1981). Absent such a showing, a plaintiff's "conclusory allegation of domination,

and nothing more," will "fail[] to create a reasonable doubt as to the independence of a majority

of the [] Board." *Andreae*, 1992 WL 43924, at *5; *accord Weiss*, 516 F. Supp. at 671.

Furthermore, "the Delaware Supreme Court has held that 'such allegations [of payments of

director's fees], without more, do not establish any financial interest.'" *In re Walt Disney Co.*

*Derivative Litig.*, 731 A.2d 342, 360 (Del. Ch. 1998) (quoting *Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988)) (alteration in original), *aff'd in part, rev'd in part sub nom. Brehm, supra.*

Plaintiff curtly asserts that individual Board members "could not exercise independent objective judgment" because "[t]he known principal wrongdoers are in a position to, and do, dominate and control the Intel Board of Directors, paying them high annual and monthly fees to assure their compliance" (Compl. ¶ 86(vi)), and because the "other directors" "have the power to terminate a director's employment" (*id.* ¶ 86(viii)). However, Plaintiff does not even name the alleged "known principal wrongdoers," or the individuals who allegedly "have the power to terminate a director's employment." (*Id.* ¶ 86(vi), (viii)).[14] Allegations that directors have a financial interest because of their directors' compensation, and nothing more, are insufficiently particularized to demonstrate that independent discretion would be compromised. *Disney*, 731 A.2d at 360.[15] Plaintiff's unsupported allegations should be dismissed without leave to amend.

### F. Plaintiff Has Failed to Plead Particularized Facts to Demonstrate that Any "Decision" by the Board Is Not Protected by the Business Judgment Rule

Although the Complaint relies principally on a failure of oversight theory, Plaintiff's counsel contended at the August 13, 2008 status conference that Plaintiff also seeks to recover

---

[14] Under Delaware law, one director cannot remove another director. That power is reserved, if at all, to the shareholders. 8 Del. C. § 141(k).

[15] *See also Khanna v. McMinn*, No. 20545-NC, 2006 WL 1388744, at *17 (Del. Ch. May 9, 2006) (concluding that where a director's alleged financial interest was limited to "an unspecified director's salary, which might influence his decisions … the Plaintiffs have not alleged particularized facts sufficient to demonstrate that [the director's] independent discretion would be compromised"); *Weiss*, 516 F. Supp. at 671 (rejecting plaintiff's conclusory allegations that four of the six directors were "controlled and dominated" by the other two, and that the four were "beholden" to the two "for their directorial offices").

for the Defendants' "conscious inaction." Transcript of Proceedings, August 13, 2008, at 23; *see also* Compl. ¶ 86(ii)(e) (referring to "[t]he directors' decision not to act").

If the Board really made a "decision" not to act, that "decision" is protected by the business judgment rule, and Plaintiff may not proceed unless he pleads particularized facts to negate the applicability of that rule. *Aronson*, 473 A.2d at 813 ("a conscious decision to refrain from acting may nonetheless be a valid exercise of business judgment and enjoy the protections of the rule"). In fact, Plaintiff pleads no facts at all concerning such a "decision" by the Board, much less any facts that would establish any infirmity in the process by which the Board reached such a decision. Moreover, because the directors are exculpated from liability for conduct other than intentional fraud, bad faith, or breach of the duty of loyalty, Plaintiff would need to plead particularized facts establishing "actual or constructive knowledge" by the directors that their conduct was legally improper. *Wood*, 953 A.2d at 141. Simply alleging that the Board knew of the investigations into Intel's conduct does not come close to establishing the knowing wrongdoing that is required.

## III.   PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH HE MAY BE GRANTED RELIEF

For reasons similar to those set forth above, Plaintiff's Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

To survive a motion to dismiss, a Complaint must contain "[f]actual allegations" that are sufficient to "raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1965 (2007). As recently articulated by the Supreme Court, a plaintiff does not satisfy its pleading obligation with mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* Rather, to state a claim, the complaint must contain enough facts to suggest that the allegations are "plausible." *Id.*

As explained above, the Complaint here is devoid of *any* facts to suggest that the Board breached its *Caremark* duty of oversight by an "utter failure" to attempt to assure a reasonable information and reporting system exists. Similarly, if any breach occurred, Plaintiff alleges no facts that would be sufficient to circumvent the exculpation clause in Intel's Certificate of Incorporation, which is permitted by Section 102(b)(7). Plaintiff relies entirely on conclusory allegations, and thus fails to satisfy the *Twombly* standard. *See also Canadian Commercial Workers Indus. Pension Plan v. Alden*, No. 1184-N, 2006 WL 456786, at *7 (Del. Ch. Feb. 22, 2006).

Thus, in addition to failing to establish demand futility, the Complaint fails to state a claim and must be dismissed.

## IV.    PLAINTIFF FAILS TO PLEAD CONTEMPORANEOUS OWNERSHIP IN ACCORDANCE WITH THE REQUIREMENTS OF FED. R. CIV. P. 23.1

Federal Rule of Civil Procedure 23.1 requires that the plaintiff in a derivative suit be a "shareholder . . . at the time of the transaction of which the plaintiff complains." Fed. R. Civ. P. 23.1; *see also Lewis v. Chiles*, 719 F.2d 1044, 1047 (9th Cir. 1983). Here, the Complaint merely alleges that Plaintiff owned shares of Intel "at all times relevant herein." (Compl. ¶ 6). However, the general allegation that Plaintiff "'is, and was during the relevant period,' or 'is, and was at all times relevant to,' a shareholder" is insufficient to allege contemporaneous ownership for the relevant period as required by Rule 23.1. *In re Computer Sci. Corp. Deriv. Litig.*, No. 06-05288 MRP, 2007 WL 1321715, at *15 (C.D. Cal. Mar. 27, 2007); *see In re Sagent Tech.*, 278 F. Supp. 2d 1079, 1096 (N.D. Cal. 2003) (to comply with Rule 23.1, complaint "must indicate when plaintiffs bought stock . . . and must state that they have owned stock continuously"); *Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759, 761-62 (2d Cir. 1968) (unsworn statement that appellant was stockholder at time of transaction in derivative complaint did not satisfy Rule 23).

Because Plaintiff fails to provide any allegation as to when he became an Intel shareholder, the derivative claims should be dismissed.

## V.    PLAINTIFF'S CLAIMS MUST BE DISMISSED TO THE EXTENT THEY ARE BARRED BY THE THREE-YEAR STATUTE OF LIMITATIONS

Because Intel is a Delaware corporation, Delaware's three-year statute of limitations applies to Plaintiff's causes of action for breach of fiduciary duties and indemnification against Intel's Board, barring any claim that accrued three years prior to the date this action was commenced, February 12, 2008. *See Smith v. McGee*, No. 2101-S, 2006 WL 3000363, at *3-4 (Del. Ch. Oct. 16, 2006) (breach of fiduciary duty claim governed by three-year statute of limitations)); *In re Dean Witter P'ship Litig.*, No. 14816, 1998 WL 442456, at *4 (Del. Ch. July 17, 1998) (same); *Getty Oil Co. v. Catalytic, Inc.*, 509 A.2d 1123, 1125 (Del. Super. Ct. 1986) (indemnification claim governed by three-year statute of limitations set forth in 10 Del. C. § 8106). The statute of limitations for breach of fiduciary duty begins to run at the time the alleged wrongful act is committed, unless it is inherently unknowable, in which case the statute of limitations begins to run once the plaintiff is on inquiry notice. *Smith v. McGee*, 2006 WL 3000363, at *3. The statute of limitations for an indemnification claim begins to run "from the time that the investigation or underlying litigation was definitely resolved." *Simon v. Navellier Series Fund*, No. 17734, 2000 WL 1597890, at *9 (Del. Ch. Oct. 19, 2000).[16]

---

16  To the extent that Plaintiff's indemnification claims are based on liability accruing more than three years ago, the claims are barred by the statute of limitations. To the extent Plaintiff's indemnification claims are based on "potential liability" in the *AMD* Litigation or other "ongoing" investigations or lawsuits (Compl. ¶ 83), such claims are not yet ripe. *See Step-Saver Data Systems, Inc. v. Wyse Tech.*, 912 F.2d 643, 650 (3d Cir. 1990) (holding that claim seeking declaration of a right to indemnification was not ripe where underlying litigation had not yet been adjudicated); *Brudno v. Wise*, No. 19953, 2003 WL 1874750, at *4 n.9 (Del. Ch.

[Footnote continued on next page]

"[A] plaintiff is on inquiry notice when he or she has sufficient information of possible wrongdoing or storm warnings of culpable activity." *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42, 56 (D. Del. 2002) (internal citations and quotations omitted); *accord Smith v. McGee*, 2006 WL 3000363, at *3; *Dean Witter*, 1998 WL 442456, at *7 n.49 (granting motion to dismiss and holding that plaintiffs were on inquiry notice because although it would have "required an expert to uncover defendants' alleged wrongdoing," "having all of the facts necessary to articulate the wrong is not required. Rather, once a plaintiff is in possession of facts sufficient to make him suspicious or that ought to make him suspicious, he is deemed to be on inquiry notice") (internal quotations omitted). Dismissal on limitations grounds is appropriate where the defense appears on the face of the complaint or is based on judicially noticeable facts. *See Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 n.14, 401 n.15 (3d Cir. 2006). Furthermore, Plaintiff "bear[s] the burden of pleading specific facts to demonstrate that the statute of limitations was, in fact, tolled." *Dean Witter*, 1998 WL 442456, at *6; *accord In re Coca-Cola Enters., Inc.*, No. 1927-CC, 2007 WL 3122370, at *6 (Del. Ch. Oct. 17, 2007).

Plaintiff makes no effort to explain why the limitations period has not run as to alleged events that occurred, by his own admission, prior to February 2005, and he does not even assert – much less "plead specific facts" to demonstrate – that the limitations period was tolled for any reason. For example:

---

[Footnote continued from previous page]
Aug. 1, 2003) ("Under Delaware law, claims for indemnity are regarded as not ripe until the liability for which indemnification is sought is determined.") (citing *Dana Corp. v. LTV Corp.*, 668 A.2d 752, 755-56 (Del. Ch. 1995), *aff'd*, 670 A.2d 1337 (Del. 1995)).

- Intel's alleged "deliberate campaign to install itself as the sole source for the new x86 instruction set microprocessor," was allegedly implemented "[b]y at least 1987" (Compl. ¶ 26). AMD's $10 million arbitration award (*id.* ¶ 27) was publicly disclosed no later than 1993.[17]

- In April 2004, it was publicly disclosed that the JFTC had made a dawn raid of Intel, the beginning of a proceeding that culminated in the findings set forth in paragraph 69 of the Complaint. RJN Ex. E (*Intel Feels Some Heat in Japan*, Business Week (Apr. 9, 2004)).

- In June 2004, the Supreme Court issued an opinion in an action brought by AMD to compel production of certain Intel documents for European Union proceedings, which described the substance of the EU complaint as follows: "AMD's complaint alleged that Intel, in violation of European competition law, had abused its dominant position in the European market through loyalty rebates, exclusive purchasing agreements with manufacturers and retailers, price discrimination, and standard-setting cartels." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 250 (2004). Thus, Plaintiffs were on notice of the conduct underlying the EU complaint (Compl. ¶ 71) as early as June 2004.

- Also in June 2004, the EU sent letters of inquiry to Dell, HP and IBM, attempting to confirm allegations by AMD that "Intel threatened PC makers with retaliation if they supported the April 2003 launch of its new 64-bit Opteron server chip and the follow-on introduction of its 64-bit Athlon 64 desktop processor." RJN Ex. F (Cliff Edwards, *The EU's Hard Look Inside Intel*, Business Week (June 21, 2004)).

Because these allegations were made public, and placed Plaintiff on inquiry notice of their existence, by no later than February 2005, no tolling theory is available to suspend the running of the statute of limitations before the date suit was first filed on February 12, 2008. *Smith v. McGee*, 2006 WL 3000363, at *4 (concluding that no tolling theory was available to a plaintiff on inquiry notice of the alleged wrongdoing for a period longer than the three-year limitations period).

Accordingly, the Complaint should be dismissed as barred under the statute of limitations.

---

[17] *See Advanced Micro Devices v. Intel Corp.*, 26 Cal. App. 4th 1655, 20 Cal. Rptr. 2d 73 (1993), *rev'd*, 9 Cal. 4th 362, 885 P.2d 994, 36 Cal. Rptr. 2d 581 (1994).

**VI.   IF THIS COURT DECLINES TO DISMISS THE COMPLAINT, IT SHOULD STAY THIS ACTION PENDING THE OUTCOME OF THE ANTITRUST LITIGATION ALREADY UNDERWAY IN THIS COURT**

Although Defendants firmly believe that dismissal of Plaintiff's Complaint is the appropriate outcome of this motion given Plaintiff's failure to make demand on Intel's Board, if the Court should determine not to dismiss the Complaint, it should, in the alternative, stay this action pending resolution of the antitrust proceeding already underway before this Court. Resolution of the antitrust action will resolve a number of issues on which this derivative case necessarily depends – including, principally, whether the conduct alleged in the Complaint in fact constitutes a violation of the antitrust laws. Resolving the antitrust action will, at a minimum, simplify the issues in this derivative case, and may even moot all or significant parts of this case should Intel be successful in that action.

Federal courts have the inherent power and the discretion to stay cases pending before them. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Cheyney State College Faculty v. Hufstedler*, 703 F.2d 732, 737-38 (3d Cir. 1983) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936)).

Courts consider a number of factors when considering a motion to stay: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set." *Commissariat a L'Energie Atomique v. Tottori Sanyo Electronic Co.*, No. 03-484-KAJ, 2004 WL 1554382, at *1 (D. Del. May 13, 2004) (citing *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991)).

24

Here, these factors militate in favor of a stay.

First, and most importantly, the issues in this case will be greatly simplified – and perhaps mooted – by the resolution of issues in the antitrust case. Whether the conduct underlying the antitrust case constitutes a violation of the antitrust laws, and whether Intel is held liable in that case, are both important elements of Plaintiff's claims in this derivative case that the Board breached its duties and caused Intel harm by failing to prevent or remedy the *alleged* anticompetitive practices. Clearly, if Intel did not violate the antitrust laws, or is not otherwise liable in to AMD in the antitrust case, then there can be no liability in the present case. It is surely most efficient to await the outcome of the antitrust proceeding before investing substantial time, money and energy in litigating the merits of this derivative proceeding.

Courts frequently grant stays in analogous circumstances. *See, e.g., Bechtel Corp. v. Local 215, Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976) (affirming stay pending outcome of arbitration; "In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues."); *Texaco, Inc. v. Borda*, 383 F.2d 607, 609 (3d Cir. 1967) (affirming stay of civil antitrust case pending resolution of criminal antitrust case because, *inter alia*, "the trial of the criminal case will reduce the scope of discovery in the civil action. And perhaps it might also simplify the issues."); *Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, No. 04-1337-KAJ, 2005 WL 2465898, at *4 (D. Del. May 18, 2005) (staying patent infringement case against distributors and retailers pending resolution of patent infringement case against manufacturers); *Commissariat a L'Energie Atomique*, 2004 WL 1554382, at *3 (same; "If, for example, CEA's patents were found invalid or the manufacturers [were] found to be not infringing, then there would be no need to proceed against the OEM/distributors or retailers, thus conserving judicial

resources and expense to the parties."); *Microchip Tech., Inc. v. Motorola, Inc.*, No. 01-264-JJF, 2002 WL 32332753, at *3 (D. Del. May 28, 2002) (staying trademark infringement case pending outcome of proceeding before the Trademark Trial and Appeal Board that would resolve whether alleged trademark was generic term). Even if resolution of the AMD Litigation might not resolve *every* claim or issue in the present case, a stay is still appropriate because resolution of the antitrust action will resolve or simplify many of the issues. *See Landis*, 299 U.S. at 256 (acknowledging that stay may be proper even if other case "may not settle every question of fact and law").

This Court has already recognized that the merits of this action depend on the outcome of the antitrust litigation. At the status conference on August 13, 2008, this Court directed that the trial of this action would not take place until *after* the trial of the AMD litigation, currently scheduled for February 2010. It makes equal sense to defer all other proceedings concerning the merits of the derivative claims, which will otherwise be very costly, which will consume judicial resources, and which may ultimately prove entirely unnecessary if Intel's defense to the pending antitrust claims is upheld. There is simply no need to burden the parties and the Court with discovery, disputes, and litigation that may be greatly simplified or resolved based on the outcome of the antitrust case.

Second, Plaintiff will suffer no prejudice or disadvantage from a stay. There is no pressing urgency to move this case forward, as evidenced by the fact that Plaintiff waited nearly three years after AMD commenced the related antitrust case to bring this derivative action. In fact, as explained above, Plaintiff waited more than *15 years* after the 1992 arbitration decision to commence his lawsuit.

Finally, no discovery has yet occurred in this action, and no specific trial date has been set. Defendants are moving at the earliest possible opportunity for this stay, and have not tarried.

Accordingly, if the Court declines to dismiss the Complaint in its entirety, it should stay this action pending the outcome of the antitrust proceeding already proceeding before this Court.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss the complaint in its entirety, without leave to amend. Alternatively, the Court should stay this action pending the outcome of the related antitrust proceedings, *In re Intel Corp. Microprocessor Antitrust Litigation*.

POTTER ANDERSON & CORROON LLP

By ___*/s/ Stephen C. Norman*_____

OF COUNSEL:

Jonathan C. Dickey
Marshall R. King
GIBSON DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

Dated: September 5, 2008
881235

Donald J. Wolfe, Jr. (I.D. #285)
Stephen C. Norman (I.D. #2686)
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, Delaware  19899-0951
(302) 984-6000
E-mail:  dwolfe@potteranderson.com
E-mail:  snorman@potteranderson.com
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I do hereby certify that, on September 5, 2008, the within document was filed with the

Clerk of Court using CM/ECF which will send notification of such filing to the following, and

that the document is available for viewing and downloading from CM/ECF:

> Brian D. Long, Esquire
> Rigrodsky & Long, P.A.
> 919 North Market Street
> Suite 980
> Wilmington, DE  19801

> /s/ Stephen C. Norman
> Stephen C. Norman (#2686)
> Potter Anderson & Corroon LLP
> Hercules Plaza – 6th Floor
> 1313 North Market Street
> P. O. Box 951
> Wilmington, Delaware  19899
> (302) 984-6000
> snorman@potteranderson.com